UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br><br><br>Plaintiff,<br><br>v.<br><br><br>ENHANCED SERVICES BILLING, INC., and<br>BILLING CONCEPTS, INC.,<br>Delaware Corporations,<br>both with their principal place of business at<br>411 John Smith Drive, Suite 200<br>San Antonio, Texas 78229; and<br><br>NEW CENTURY EQUITY HOLDINGS CORP.<br>A Delaware Corporation,<br>10101 Reunion Place, Suite 450<br>San Antonio, Texas 78216<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. No. **01 1660**

FILED

AUG - 9 2001

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF WITH DEFENDANT NEW CENTURY EQUITY HOLDINGS CORP.**

WHEREAS: Plaintiff, the United States of America, has commenced this action by filing the Complaint herein; Defendant has waived service of the Summons and Complaint; the parties have been represented by the attorneys whose names appear hereafter; and the parties have agreed to settlement of this action upon the following terms and conditions, without adjudication of any issue of fact or law and without Defendant admitting liability for any of the matters

alleged in the Complaint;

THEREFORE, on the joint motion of Plaintiff and Defendant, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## FINDINGS

1.       This Court has jurisdiction over the subject matter and the parties.

2.       Venue is proper as to all parties in the District of Columbia.

3.       The activities of Defendant is in or affecting commerce, as defined in the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 44.

4.       The Complaint states a claim upon which relief may be granted against Defendant under §5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

5.       This Order resolves all matters arising from the allegations in the Complaint as of the entry date of this Order.

6.       This Order is for settlement purposes only and does not constitute and shall not be interpreted to constitute an admission by Defendant that it has engaged in violations of any law or regulation, including, but not limited to, the Federal Trade Commission Act, the Telephone Disclosure and Dispute Resolution Act of 1992 ("TDDRA"), the FTC Trade Regulation Rule pursuant to TDDRA, 16 C.F.R. Part 308 ("the Pay-Per-Call Rule"), or that the facts alleged in the Complaint, other than the jurisdictional facts, are true.

7.       Entry of this Order is in the public interest.

## DEFINITIONS

For Purposes of this Stipulated Final Judgment and Order, the following definitions shall apply:

1. "Commission" or "FTC" shall mean the Federal Trade Commission.

2. "DDD Calling" shall mean DDD Calling, Inc., its divisions, subsidiaries, and affiliates.

3. "Defendant" means New Century Equity Holdings Corp., its divisions, subsidiaries, affiliates, successors, and assigns.

4. "Letter of Authorization" shall mean a written document, or such other form of authorization permissible under law or regulation for common carrier telecommunications services, that has the purpose of authorizing the purchase of common carrier telecommunications services bundled with other services and discloses the material terms and conditions of the purchase.

5. "Line Subscriber" means an individual or entity that has arranged with a Local Exchange Carrier to obtain local telephone service provided through an assigned telephone number, and to be billed for such service on a monthly (or other periodic) basis. For purposes of this Order only, in cases where the Line Subscriber is an entity, including but not limited to a corporation, partnership, association, or unincorporated association, the term "Line Subscriber" shall include those individuals with authority to bind the entity. For purposes of this Order only, in cases where the Line Subscriber is an individual, the term "Line Subscriber" shall include the individual in whose name the LEC bill is issued, any adult person authorized by that individual to charge a Telephone-Billed Good or Service to that individual's LEC bill, and any adult person

3

lawfully authorized to represent such individual (such as the guardian or holder of power-of-attorney).

6.      "Local Exchange Carrier" or "LEC" means the entity providing local telephone service from which Line Subscribers receive their telephone bill.

7.      "Pay-Per-Call Rule" means the FTC Trade Regulation Rule located at Title 16 of the Code of Federal Regulations, Part 308, a copy of which is attached hereto as Appendix A and expressly incorporated herein by reference.

8.      "Person" shall mean any individual, partnership, corporation, association or unincorporated association, government or governmental subdivision or agency, group, or other entity.

9.      "Recurring Charge" means the first and each subsequent charge on a LEC bill for a Telephone-Billed Good or Service that is billed or incurred on a repeating basis from billing cycle to billing cycle. Notwithstanding the foregoing, "Recurring Charge" shall not include multiple charges for Telephone-Billed Goods or Services that are billed or incurred on a per-transaction basis, or on any other basis sensitive to usage, or that result from separate and distinct transactions to purchase or use a Telephone-Billed Good or Service.

10.     "RRV Enterprises" means RRV Enterprises, Inc., its divisions, subsidiaries and affiliates.

11.     "Sweepstakes Box" means the box or receptacle into which consumers place entry forms or documents used to enter sweepstakes, contests, prize promotions, or drawings of any description.

12.     "Telephone-Billed Good or Service" means: an Internet Web site; Internet Web page; Internet Web hosting; Internet advertising; set-up fees for an Internet Web site, page, hosting or advertising; hospital telephone and television rental; voice mail; psychic club membership; and any other enhanced service the charge for which is billed or caused to be billed to a Line Subscriber's LEC bill.  This term, however, excludes (i) common carrier telecommunications services; (ii) services accessed by dialing a 900 number or other number that can be blocked by the Line Subscriber pursuant to 47 U.S.C. § 228(c).  For purposes of this Order, common carrier telecommunications services shall include common carrier telecommunications services bundled with other services where a single, undifferentiated fee is charged for the bundled offering and the purchase of the bundled offering is incurred pursuant to a Letter of Authorization.

13.     "Vendor" means an entity that offers any good or service that is billed to Line Subscribers on their monthly LEC bills.

## I.   LINE SUBSCRIBER AUTHORIZATION FOR TELEPHONE-BILLED GOODS OR SERVICES

Defendant is hereby permanently restrained and enjoined from submitting a billing record to any LEC for inclusion on any Line Subscriber's LEC bill, or from billing or causing to be billed, or from collecting or attempting to collect payment, directly or indirectly, from any Line Subscriber for any Telephone-Billed Good or Service, when the Defendant knew or should have known that the charge being billed or collected was not expressly authorized by that Line Subscriber.

## II.  RRV ENTERPRISES OR DDD CALLING

**IT IS FURTHER ORDERED** that Defendant is permanently restrained and enjoined

from providing customer service or submitting a billing record to any LEC for inclusion on any

Line Subscriber's LEC bill, billing or causing to be billed, or collecting or attempting to collect

payment, directly or indirectly, from any Line Subscriber on behalf of RRV Enterprises or DDD

Calling.

## III.  PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendant, in connection with the provision of

customer service related to any charge for a Telephone-Billed Good or Service, is hereby

permanently restrained and enjoined from making any express or implied misrepresentation of

material fact, orally or in writing, including but not limited to:

1.     Any misrepresentation that any Line Subscriber is obligated to pay for the

purchase of any Telephone-Billed Good or Service that the Line Subscriber did not expressly

authorize;

2.     Any misrepresentation that a Line Subscriber is obligated to pay any charge on

the basis that a Telephone-Billed Good or Service was purchased or accessed from the Line

Subscriber's telephone, unless the Line Subscriber expressly authorized the purchase; and

3.     Any misrepresentation that a Line Subscriber has authorized a purchase.

6

## IV.  PRODUCTION OF A REPORT AND ENGAGEMENT OF A CERTIFIED PUBLIC ACCOUNTING FIRM TO PERFORM SERVICES IN ACCORDANCE WITH ATTESTATION SERVICES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

**IT IS FURTHER ORDERED** that if Defendant bills a Line Subscriber for a Telephone-Billed Good or Service, causes a Line Subscriber to be billed for a Telephone-Billed Good or Service, collects or causes to be collected charges for a Telephone-Billed Good or Service,  or engages in LEC billing for a Telephone-Billed Good or Service, Defendant shall:

A.     Write and produce a report containing the following information:

   1.     For each Vendor of Telephone-Billed Goods or Services who contracts with Defendant for the billing of Recurring Charges:

   a.     A detailed description as well as true and correct copies of all documents relating to the following information:

   (1).   Vendor's name and address;

   (2).   Names of each officer, owner and principal of such Vendor;

   (3).   Proof of such Vendor's corporate or partnership status;

   (4).   Any information regarding whether such Vendor, its affiliates, or officers or principals have been subject to prior conviction for fraud or unfair or deceptive practices, or have had billing services terminated;

   (5).   The names and addresses of any telemarketing company to be used by the Vendor, and the name and address of each such telemarketing company's officers and principals;

7

(6)    The name and address of any third party verification company to be used by the Vendor, and the name and address of each such verification company's officers and principals;

(7).    All advertising and other materials, including but not limited to marketing materials, used by such Vendor to offer or sell products to consumers;

(8).    A clear, complete and truthful description of the Vendor's goods or services and how such goods and services are to be marketed; and

(9).    All scripts for both sales and verification;

b.    Whether the Defendant has obtained the documents and information set forth in a(1)-(9) above prior to engaging in any business relationship with the Vendor, and if not, which documents and information were not obtained prior to engaging in any business relationship with the Vendor;

c.    The number and dollar amount of monthly billings sent to consumers, directly or indirectly, by Defendant on behalf of the Vendor,

d.    The number and rate of customer inquiries per month. The term "inquiry" means a consumer contact pertaining to a charge on a telephone bill. The contact can be with either the Defendant or a

third party retained to perform services relating to consumer

inquiries. The term "rate of customer inquiries per month" for a

particular Vendor is defined to mean the number of that Vendor's

customers who make an inquiry in a given month divided by the

number of billings for that Vendor in the preceding month;

e.  The number, dollar amount and rate of refunds made to consumers

per month for billings sent to consumers directly or indirectly by

Defendant on behalf of a Vendor. The information shall include,

but not be limited to, refunds generated by contacts with the

Defendant as well as refund generated as a result of contacts with

LECs. The "rate of refunds" is the dollar amount of refunds by a

vendor in a given month divided by the dollar amount of billings

for that Vendor in the preceding month;

f.  Through a scientifically designed random sample of at least 50, or

5% (whichever is greater), but not to exceed 250, of individual

files of information sent to LEC's for use in billing Line

Subscribers, determine that the individual files includes the

following: a clear identification of the billing entity; a clear

identification of the vendor; a clear description of the goods or

services to which the charges are asserted; a clear identification of

the charges; and a toll-free telephone number that Line Subscribers

may call to make inquiries concerning the billing; and

g.      Any corrective or disciplinary action taken, if any, by the

Defendant, with respect to such Vendor and the results of those

actions, including but not limited to, termination.

2.      All policies and procedures of Defendant concerning consumer inquiries

and refunds with respect to Vendors of Telephone-Billed Goods or

Services that are to be billed as Recurring Charges.  The report shall also

describe in detail whether Defendant has established any policies and

procedures, what the policies and procedures are, and whether such

policies and procedures have been implemented, applied, and followed,

and for what time period.  The report shall also describe in detail the

average length of time from when the consumer requests a refund to when

a refund is authorized and the Defendant has taken final action to provide

a refund;

3.      All fraud prevention and detection programs in place relating to

Telephone-Billed Goods or Services that are to be billed as Recurring

Charges.  The report shall also describe in detail what the programs are,

whether they have been implemented, and followed, and for what time

period they have been in place.

*Provided further*, the Defendant shall produce an initial report that shall be written and produced

eight months after Defendant first bills a Line Subscriber for a Telephone-Billed Good or Service

or causes a Line Subscriber to be billed for a Telephone-Billed Good or Service or engages in

collection activity for a Telephone-Billed Good or Service or engages in LEC billing for a

10

Telephone-Billed Good or Service    It shall be signed by the officer of the Defendant who signs

this Order.  The report shall cover the entire seven month period.  Thereafter, the Defendant shall

write and produce a report for each of two consecutive twelve-month periods.  Each of these

reports shall also be signed by the officer of the Defendant who signs this Order.  The first of

these twelve-month reporting periods shall begin on the first day of the eighth full calendar

month after Defendant first bills a Line Subscriber for a Telephone-Billed Good or Service or

causes a Line Subscriber to be billed for a Telephone-Billed Good or Service, or engages in

collection activity for a Telephone-Billed Good or Service, or engages in LEC billing for a

Telephone-Billed Good or Service.  Each of the reports shall be produced one month after the

reporting period ends.  Each of the reports shall be delivered to the Federal Trade Commission at

the address set forth in Paragraph XV below and to the firm of certified public accountants hired

pursuant to provisions A and B of this paragraph.  Each of the reports shall be delivered five

weeks after the reporting period ends.  If the reports are incomplete or not produced on time,

Defendant shall hire a firm of certified public accountants to collect, classify, summarize and

communicate the missing information or data.   The firm of certified public accountants shall

supply the missing information or data in a report to be written and produced within thirty days

of the firm being retained.  These reports will be in addition to the reports required pursuant to

section B below.  The firm of certified public accountants shall deliver copies of the reports to

the Federal Trade Commission at the address in Paragraph XV below, and to the Defendant

within forty days of  being retained.  Staff of the Federal Trade Commission shall have the right

to prior approval of the firm of certified public accountants.  Defendant shall not engage a firm of

certified public accountants that has not been approved by staff of the Federal Trade

11

Commission.  Approval of a firm of certified public accountants for one reporting period does not mean that the firm is approved for every reporting period.  Defendant shall pay all fees and costs charged by any firm of certified public accountants engaged to perform the services set forth in this paragraph.  Defendant shall grant full and complete access to any documents or information sought by the firm of certified public accountants.

        B.      Hire a firm of certified public accountants to attest, in accordance with attestation standards established by the American Institute of Certified Public Accountants, to the accuracy of the reports created and produced by Defendant.  The firm of certified public accountants shall write and produce a complete analysis, including but not limited to, an explanation of all procedures the firm followed and all methods the firm used, the firm's findings and conclusions.  Each written analysis shall be produced to the Defendant and to the Federal Trade Commission at the address set forth in Paragraph XV below within 30 days of receiving a report from the Defendant.  Staff of the Federal Trade Commission, however, shall have the right to prior approval of the firm of certified public accountants.  Defendant shall not engage a firm of certified public accountants that has not been approved by staff of the Federal Trade Commission.  Approval of a firm of certified public accountants for one reporting period does not mean that the firm is approved for every reporting period.  Defendant shall pay all fees and costs charged by any firm of certified public accountants engaged to perform the services set forth in this paragraph.  Defendant shall grant full and complete access to any documents or information sought by the firm of certified public accountants.

## V.  PROHIBITED BILLING PRACTICES

**IT IS FURTHER ORDERED** that Defendant is permanently restrained and enjoined from failing to implement the following billing practices:

For all Telephone-Billed Goods or Services, Defendant shall, within the LEC-imposed limitations to display billing data, submit data to LECs which enables them to prepare a bill that clearly and conspicuously discloses:

      1.     For each Telephone-Billed Good or Service, an accurate description of the type of good or service for which payment is being requested and the amount of the charge; and

      2.     The toll-free telephone number where the Line Subscriber can readily obtain resolution of complaints and removal of any unauthorized charge from a LEC bill.

## VI.  PROHIBITED BUSINESS PRACTICES

**IT IS FURTHER ORDERED** that Defendant is hereby permanently restrained and enjoined from submitting a billing record for a Telephone-Billed Good or Service to any LEC for inclusion on a Line Subscriber's LEC bill, or from billing or causing to be billed, or from collecting or attempting to collect payment, directly or indirectly, on behalf of any Vendor that offers Telephone-Billed Goods or Services for sale to consumers after the entry date of this Order where the Defendant knew or should have known that the Vendor:

      1.     Does not obtain express authorization for such Telephone-Billed Goods or Services from the Line Subscriber;

2.      Does not disclose clearly and conspicuously to the Line Subscriber before such Line Subscriber authorizes charges for the Vendor's goods or services, the following information:

        a.      The total cost of the goods or services offered;

        b.      The number and amount of any payments to be made for the purchase;

        c.      That charges for the goods or services will be billed to the Line Subscriber's telephone bill, if such is the case;

        d.      Any material term, condition, or limitation of the transaction or on the use of the offered good or service; and

        e.      The Vendor's refund policy, if any, or if none, the fact that refunds will not be granted; or

        f.      The means, if any, by which the purchase may be canceled.

3.      Obtains authorizing signatures: (a) solely by using a consumer's entry in a Sweepstakes Box or (b) from the form or document used or intended to be used by consumers to enter sweepstakes, contests, prize promotions or drawings of any description.

## VII. SALE OR LEASE OF SOFTWARE OR PROCESSING SERVICES

**IT IS FURTHER ORDERED** that, for purposes of this Order, Defendant shall not be deemed to have billed or caused to be billed, directly or indirectly, a charge for a Telephone-Billed Good or Service, or for any other good or service, where Defendant, pursuant to a valid, arms-length transaction, solely provides software or back-office data processing and data management services for LEC billing records.

## VIII.  NO AUTHORIZATION FROM TELEPHONE NUMBER

**IT IS FURTHER ORDERED** that Defendant is hereby permanently restrained and enjoined from submitting a billing record to any LEC, or billing or causing to be billed, collecting or attempting to collect payment, directly or indirectly, on behalf of a Vendor, for a Telephone-Billed Good or Service, where the Defendant knew or should have known that the Vendor's sole basis for asserting that the Line Subscriber has authorized the purchase of such good or service is the Vendor's possession of the Line Subscriber's telephone number, whether obtained  through Automatic Number Identification ("ANI") or through any other means, after the entry date of this Order.

## IX.  SWEEPSTAKES AND PRIZE PROMOTIONS

**IT IS FURTHER ORDERED** that Defendant is hereby permanently restrained and enjoined from submitting a billing record to a LEC for any good or service that the Defendant knew or should have known was sold to the consumer after the entry date of the Order:  (a) solely by using a Sweepstakes Box; or (b) by a written entry form from the consumer unless the material terms and conditions of the sale of the good or service were clearly and conspicuously disclosed to the consumer separate from the entry form.

## X.  COMPLIANCE WITH FTC PAY-PER-CALL RULE

**IT IS FURTHER ORDERED** that the Defendant is permanently restrained and enjoined from failing to comply with the Pay-Per-Call Rule, including but not limited to the billing dispute and resolution procedures.

## XI. MONETARY RELIEF

**IT IS FURTHER ORDERED** that Defendant shall pay $350,000.00 to the Commission by certified check or wire transfer within 10 business days of entry of the Order.

1. No portion of the payment as herein provided shall be deemed a payment of any fine, penalty, forfeiture, or punitive assessment.

2. No portion of the payment as herein provided shall be deemed a payment of any obligation of any entity other than Defendant. The FTC does not waive, and expressly reserves, the right to seek additional monetary relief from entities other than the Defendant in order to make consumers whole, and/or to obtain disgorgement of ill-gotten gains, and/or penalties.

3. In the event of any default on any obligation of Defendant to make payment under this Section, interest computed pursuant to 28 U.S.C. § 1961(a), shall accrue from the date of default to the date of payment.

4. All funds paid pursuant to this Paragraph shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress and any attendant expenses for the administration of any redress fund. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the practices alleged in the complaint. Any funds not used for such equitable relief shall be deposited to the Treasury as disgorgement. Defendant shall have no right to challenge the Commission's choice of remedies under this Paragraph.

## XII.   COLLECTION OF OLD CHARGES

**IT IS FURTHER ORDERED** that, as of the entry date of this Order, Defendant

is permanently restrained and enjoined from submitting billing records to a LEC, billing or

causing to be billed, or collecting or attempting to collect payment, directly or indirectly through

third-party debt collectors or other entities, on behalf of a Vendor, for Pay-Per-Call Services

billed on Defendant's portion of the LEC bill if the Line Subscriber, at any time before the

effective date of the Order, notified Defendant of a billing error as defined in the Pay-Per-Call

Rule with respect to those services or charges, unless the Defendant has complied with the billing

and dispute provisions of the Pay-Per-Call Rule.

## XIII.   BILLING LIST CONFIDENTIALITY

**IT IS FURTHER ORDERED** that Defendant is hereby permanently restrained and

enjoined from selling or renting the name, address, telephone number, credit card number, bank

account number, email address or other identifying information of any Line Subscriber obtained

in connection with Defendant's submission of billing records to a LEC for any Telephone-Billed

Good or Service at any time prior to entry of the Order. *Provided, however,* that Defendant may

disclose such identifying information to a law enforcement or regulatory agency upon request or

as required by any law, regulation or court order.

## XIV.   MAINTENANCE OF BUSINESS RECORDS

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the entry date of

this Order, for any business that Defendant, or its representatives, now or in the future, directly or

indirectly manage, control, or have a majority ownership interest in, that is engaged in submitting

billing records to LECs, or billing or otherwise causing to be billed, for Telephone-Billed Goods

or Services, Defendant, and its representatives are hereby restrained and enjoined from failing to create, and from failing to retain for a period of two (2) years following the date of such creation, unless otherwise specified, the following business records related to Telephone-Billed Goods or Services:

1.    Books, records and accounts that, in commercially reasonable detail, accurately and fairly reflect the cost of goods or services sold, annual and quarterly gross revenues generated, and the disbursement of such revenues;

2.    Records accurately reflecting the name, address and home telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and if applicable, the date and reason for the person's termination, at all times while any such person is employed by Defendant, or its representatives and for a period of at least three (3) years thereafter;

3.    Records containing the telephone numbers, quantity of all goods or services purchased or billed, and a description of all such goods or services, for all Line Subscribers, including, but not limited to, all electronic billing data regarding billing records for Telephone-Billed Goods or Services submitted by Defendant, or its representatives to a LEC;

4.    Records of every consumer inquiry, complaint or refund request received by Defendant, or its representatives, whether directly, or indirectly through a third party, which records shall be organized and maintained so that all records relating to a particular Line

Subscriber are retrievable by the Line Subscriber's telephone number, including, but not limited to:

      a.     The Line Subscriber's telephone number and the dollar amount paid or allegedly owed by the Line Subscriber;

      b.     A dated copy of the written complaint, inquiry or refund request, if any, and records reflecting the date and content of any complaint, inquiry or refund request made;

      c.     If provided by the consumer, the basis of the complaint, including the name of any salesperson complained against, and the nature and result of any investigation conducted by Defendant, or its representatives concerning the complaint;

      d.     Each response by Defendant, or its representatives and the date of the response;

      e.     Any final resolution by Defendant, or its representatives and the date of the resolution; and

      f.     In the event of a denial of a refund request by Defendant, or its representatives, the reason for the denial;

5.     Records of the name, address and telephone number of any Vendor for which the Defendant, or its representatives submit billing records for Telephone-Billed Goods or Services to LECs for inclusion on LEC bills;

6.     For each Vendor for which the Defendant, or its representatives submit billing records for Telephone-Billed Goods or Services to LECs for inclusion on LEC bills, a copy or

recording, organized and maintained so that all materials relating to the Vendor may be retrieved by the name of the entity and the dates of their use, of each materially different

     a.     Print, television, radio, video or Internet advertisement or other item of promotional material;

     b.     Sales script;

     c.     Verification script;

     d.     Item of sales training material;

     e.     Consumer response script; and

     f.     Item of consumer response training material;

7.     Records for each Vendor for which the Defendant, or its representatives submit billing records for Telephone-Billed Goods or Services to LECs for inclusion on LEC bills, organized and maintained by Vendor name and each separate Vendor good or service, that show:

     a.     The total dollar amount of billing records submitted to the LECs on behalf of the Vendor by Defendant, or its representatives, both in the aggregate and on a monthly basis;

     b.     The total number of written complaints and refund requests relating to the Vendor received by Defendant, or its representatives directly or through third parties, both in the aggregate and on a monthly basis;

     c     The total revenues received for providing customer service to consumers on behalf of the Vendor;

     d.     The total number of telephone calls relating to the Vendor to all toll-free telephone numbers for Defendant, or its representatives that appear on Line Subscribers'

LEC bills, whether inquiries, referrals, complaints or refund requests both in the aggregate and on a monthly basis;

       e.      The total dollar amount of credits for Line Subscribers received from the Vendor for submission to the LECs, both in the aggregate and on a monthly basis;

       f.      The total dollar amount of all LEC credits or adjustments for the Vendor, both in the aggregate and on a monthly basis; and

       g.      The total number of oral and written complaints regarding unauthorized charges for Telephone-Billed Goods or Services received by Defendant, or its representatives, both in the aggregate and on a monthly basis;

8.      Records showing the name and address of each entity to whom Defendant solely provided software or back-office data processing and data management services for LEC billing records, whether by sale, lease, contract or other such arrangement.

## XV.  COMPLIANCE REPORTING BY DEFENDANT

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

1.      Six months after the entry date of this Order, the Defendant shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which Defendant has complied and is complying with this Order.  The report shall include but not be limited to:

a.      The then-current business address and telephone number of the Defendant

and its chief executive officer; and for each employer of the Defendant and its chief

executive officer, a description of business activities and the Defendant's and its chief

executive officer's title and responsibilities;

b.      A description of the business activities of each entity that is majority

owned, managed or controlled by Defendant;

c.      A copy of each acknowledgment of receipt of this Order obtained by

Defendant;

d.      A statement describing the manner in which the Defendant has complied

with and is complying with the injunctive provisions of this Order;

e.      Records showing the name and address of each entity to whom Defendant

solely provided software or back-office data processing and data management services for

LEC billing records, whether by sale, lease, contract or other such arrangement.

2.      For three (3) years from the entry date of this Order, Defendant shall notify the

Commission of the following:

a.      Any changes in the chief executive officer or the business mailing address

and business telephone number of its chief executive officer within ten (10) days of the

date of such change;

b.      Any proposed change in the business structure of the Defendant, including

but not limited to a change in structure or an acquisition by which the Defendant engages

in LEC billing for a Telephone-Billed Good or Service, or any proposed change in the

structure of any business entity engaged in submitting billing records to LECs for

22

Telephone-Billed Goods or Services that is majority owned, managed or controlled by the Defendant, such as creation, incorporation, dissolution, assignment, sale, merger, dissolution of subsidiaries, filing of a bankruptcy petition, change in the corporate or partnership name or address, or any other change that may affect compliance obligations arising out of this Order, not less than fifteen (15) days prior to the entry date of any proposed change; *provided, however,* that, with respect to any proposed change in the corporation about which the Defendant learns less than fifteen (15) days prior to the date such action is to take place, Defendant shall notify the Commission as soon as is practicable after learning of such proposed change;

3.      Upon written request by a representative of the Commission, the Defendant shall submit additional written reports (under oath, if requested) and produce documents on reasonable notice with respect to any conduct subject to this Order;

4.      For the purposes of this Order, Defendant, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to the following address:

> Associate Director
> Division of Marketing Practices
> Federal Trade Commission, Room 238
> 600 Pennsylvania Avenue, NW
> Washington, D.C.  20580.

## XVI.   COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE

**IT IS FURTHER ORDERED** that the Commission is authorized to monitor

Defendant's compliance with this Order by all lawful means, including but not limited to the

following:

1.      The Commission is authorized, without further leave of court, to obtain discovery

from any person in the manner provided by Chapter V of the Federal Rules of Civil Procedure,

Fed. R. Civ P. 26-37, including the use of compulsory process pursuant to Fed. R. Civ. P. 45, for

the purpose of monitoring and investigating Defendant's compliance with any provision of this

Order. In this regard, Defendant does not waive any and retains all rights available to it under

the Federal Rules of Civil Procedure;

2.      The Commission is authorized to use representatives posing as consumers,

potential clients and suppliers to Defendant, including holding incidental conversations with

customer service and other representatives of the Defendant, without the necessity of

identification, prior notice, or the presence of counsel; and

3.      Nothing in this Order shall limit the Commission's lawful use of compulsory

process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to investigate

whether Defendant has violated any provision of this Order, Section 5 of the FTC Act, 15 U.S.C.

§ 45, or any applicable rule or regulation promulgated and enforced by the Commission

thereunder.

## XVII.   ACCESS TO BUSINESS PREMISES

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the entry date of this Order, for the purpose of further determining compliance with this Order, Defendant shall permit representatives of the Commission, within five (5) business days of receipt of written notice from the Commission:

1.        Access during normal business hours to any office or facility storing documents, of any business that Defendant, directly or indirectly manages, controls, or has a majority ownership interest in, that is engaged in LEC billing or collection activities for Telephone-Billed Goods or Services, or assisting others engaged in those activities.  In providing such access, Defendant shall permit Commission representatives to remove originals of documents, or copies at Defendant's option and expense, relevant to Defendant's compliance with any provision of this Order for a period not to exceed three (3) business days so that the documents may be inspected, inventoried and copied; and

2.        To interview the officers, directors, and employees, including all personnel involved in responding to consumer complaints or inquiries, and all sales personnel, whether designated as employees, consultants, independent contractors or otherwise, of any business concerning matters relating to compliance with the terms of this Order. The person interviewed may have counsel present; *provided, however,* that, upon application of the Commission and for good cause shown, the Court may enter an *ex parte* order granting immediate access to Defendant's business premises for the purposes of inspecting and copying all documents relevant to any provision of this Order.

## XVIII.   DISTRIBUTION OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that:

For a period of three (3) years from the entry date of this Order, Defendant shall:

a.      Provide a copy of this Order to all officers, directors, and partners of the Defendant and each individual serving the Defendant in a management capacity, whether designated as employees, consultants, independent contractors or otherwise, within ten (10) business days of the entry date of this Order or of employing or retaining any such person serving Defendant in a management capacity, for any business that Defendant directly or indirectly manages, controls, or have a majority ownership interest in, that is engaged in submitting billing records to LECs for Telephone-Billed Goods or Services or assisting others engaged in those activities;

b.      Provide a copy of this Order to, and obtain a signed and dated acknowledgment of receipt of the copy from all of Defendant's personnel responsible for drafting the customer service guidelines and scripts or in training new customer service personnel to respond to consumer complaints or inquiries regarding Telephone-Billed Goods or Services, and all of Defendant's sales personnel that relate to Telephone-Billed Goods or Services, whether designated as employees, consultants, independent contractors or otherwise, within ten (10) business days of the entry date of this Order or of employing or retaining any such person for any business that Defendant, directly or indirectly manages, controls, or has a majority ownership interest in, that is engaged in submitting billing records to LECs for Telephone-Billed Goods or Services or in assisting others engaged in those activities,

26

c.      Provide a summary of the customer service provisions of this Order in the training materials for new customer service personnel that will be responsible for handling consumer complaints or inquires regarding Telephone-Billed Goods or Services;

d.      Provide a copy of this Order to each new Vendor for Telephone-Billed Goods or Services with which the Defendant contracts to submit billing records to LECs for Telephone-Billed Goods or Services within ten (10) business days of contracting with such new Vendor; and

e.      Maintain for a period of three (3) years after creation, and upon reasonable notice, make available to representatives of the Commission, the original signed and dated acknowledgments of receipt of copies of this Order required by this Paragraph XVIII.

## XIX.  ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that within five (5) business days after receipt by Defendant of this Order as entered by the Court, the chief executive officer of the Defendant shall submit to the Commission a truthful sworn statement that shall acknowledge receipt of this Final Order.

## XX.  COSTS

**IT IS FURTHER ORDERED** that each party shall bear its own costs and attorney fees incurred in connection with this action.

## XXI.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court will retain jurisdiction of this matter for the purpose of enabling any of the parties to this Order to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the interpretation or modification of this Order, for the enforcement or compliance therewith, or the punishment of violations thereof.

The parties, by their respective counsel, hereby consent to the terms and conditions of the Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief set forth above, and consent to the entry hereof.  Defendant waives any rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412, amended by Pub. L. 104-121, 110 Stat. 847, 863-864 (1996).

**FOR THE UNITED STATES OF AMERICA:**

STUART E. SCHIFFER
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice

KENNETH L. WAINSTEIN
United States Attorney

EUGENE M. THIROLF
Director
Office of Consumer Litigation


By: _Elizabeth Stein_
ELIZABETH STEIN, Attorney
DC Bar No. 227140
Office of Consumer Litigation
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington. D.C. 20044
(202) 307-0486

**FOR THE FEDERAL TRADE COMMISSION**

Eileen Harrington
Associate Director
Division of Marketing Practices


By: _Elizabeth Stein for_
RUSSELL DEITCH, Attorney
Division of Marketing Practices
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C.  20580
Tel. (202) 326-2585
Fax. (202) 326-3395

APR 17 2001

**FOR DEFENDANT NEW CENTURY EQUITY HOLDINGS CORP.**

Parris H. Holmes, Jr.
Chairman, New Century Equity Holdings Corp.
10101 Reunion Place, Suite 450
San Antonio, Texas 78216

**COUNSEL FOR NEW CENTURY EQUITY HOLDINGS CORP.**

Stephen C. Palmer, Esq.
Swidler Berlin Shereff Friedman, LLP
3000 K Street NW, Suite 300
Washington, DC 20007
Tel. (202) 424-7500
Fax. (202) 424-7647


The parties, having agreed to the entry of this Order enjoining Defendant from violating

Section 5 of the FTC Act, 15 U.S.C. § 45(a), and requiring other equitable relief, this Stipulated

Final Judgment and Order For Permanent Injunction and Other Equitable Relief is hereby

approved and adopted by the Court

August 7, 2001
DATED

UNITED STATES DISTRICT JUDGE
DISTRICT OF COLUMBIA

30

FILED

**Appendix A**

AUG − 9 2001

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Pt. 308**                                          **16 CFR Ch. I (1–1–98 Edition)**

ordered by the smokeless tobacco man-
ufacturer, or the date the objects or
materials are scheduled to be dissemi-
nated, provided that the production of
such materials or objects is carried out
in a manner consistent with customary
business practices.

(c) A plan for the rotation, display,
and dissemination of warning state-
ments in smokeless tobacco advertis-
ing shall include a representative sam-
ple of each of the three warning state-
ments required by the Act and these
regulations. This provision does not re-
quire the submission of all advertising
for each brand marketed by a manufac-
turer, packager, or importer of smoke-
less tobacco products and shall be
deemed to be satisfied by submission of
actual examples of different types of
advertising materials for various
brands, prototypes of actual advertis-
ing materials, the warning statement
as it would appear in different sizes of
advertisements, or acetates or other
facsimiles for the warning statement
as it would appear in different sizes of
advertisements.

[51 FR 40015, Nov. 4, 1986. Redesignated and
amended at 56 FR 11662, 11663, Mar. 20, 1991;
58 FR 4874, Jan. 15, 1993; 61 FR 45288, Aug. 30,
1996]

## PART 308—TRADE REGULATION RULE PURSUANT TO THE TELE-PHONE DISCLOSURE AND DISPUTE RESOLUTION ACT OF 1992

Sec.
308.1  Scope of regulations in this part.
308.2  Definitions.
308.3  Advertising of pay-per-call services.
308.4  Special rule for infrequent publica-
tions.
308.5  Pay-per-call service standards.
308.6  Access to information.
308.7  Billing and collection for pay-per-call
services.
308.8  Severability.
308.9  Rulemaking review.

AUTHORITY: Pub. L. 102-556, 106 Stat. 4181
(15 U.S.C. 5701, et seq.)

SOURCE: 58 FR 42400, Aug. 9, 1993, unless
otherwise noted.

**§ 308.1  Scope of regulations in this part.**

This rule implements titles II and III
of the Telephone Disclosure and Dis-

pute Resolution Act of 1992, to be codi-
fied in relevant part at 15 U.S.C. 5711-
14, 5721-24.

**§ 308.2  Definitions.**

(a) *Bona fide educational service* means
any pay-per-call service dedicated to
providing information or instruction
relating to education, subjects of aca-
demic study, or other related areas of
school study.

(b) *Commission* means the Federal
Trade Commission.

(c) *Pay-per-call service* has the mean-
ing provided in section 228 of the Com-
munications Act of 1934, 47 U.S.C. 228.[1]

(d) *Person* means any individual,
partnership, corporation, association,
government or governmental subdivi-
sion or agency, or other entity.

(e)(1) *Presubscription or comparable ar-
rangement* means a contractual agree-
ment in which

(i) The service provider clearly and
conspicuously discloses to the con-
sumer all material terms and condi-
tions associated with the use of the
service, including the service provid-
er's name and address, a business tele-
phone number which the consumer

---

[1] Section 228 of the Communications Act of
1934 states:

(1) The term *pay-per-call services* means any
service—

(A) In which any person provides or pur-
ports to provide—

(i) Audio information or audio entertain-
ment produced or packaged by such person;

(ii) Access to simultaneous voice conversa-
tion services; or

(iii) Any service, including the provision of
a product, the charges for which are assessed
on the basis of the completion of the call;

(B) For which the caller pays a per-call or
per-time-interval charge that is greater
than, or in addition to, the charge for trans-
mission of the call; and

(C) Which is accessed through use of a 900
telephone number or other prefix or area
code designated by the (Federal Communica-
tions) Commission in accordance with sub-
section (b)(5) (47 U.S.C. 228(b)(5)).

(2) Such term does not include directory
services provided by a common carrier or its
affiliate or by a local exchange carrier or its
affiliate, or any service for which the charge
is tariffed, or any service for which users are
assessed charges only after entering into a
presubscription or comparable arrangement
with the provider of such service.

**Appendix A**

**Federal Trade Commission** <span style="float:right">§ 308.3</span>

may use to obtain additional information or to register a complaint, and the rates for the service;

(ii) The service provider agrees to notify the consumer of any future rate changes;

(iii) The consumer agrees to utilize the service on the terms and conditions disclosed by the service provider; and

(iv) The service provider requires the use of an identification number or other means to prevent unauthorized access to the service by nonsubscribers.

(2) Disclosure of a credit card or charge card number, along with authorization to bill that number, made during the course of a call to a pay-per-call service shall constitute a presubscription or comparable arrangement if the credit or charge card is subject to the dispute resolution requirements of the Fair Credit Billing Act and the Truth in Lending Act, as amended. No other action taken by the consumer during the course of a call to a pay-per-call service can be construed as creating a presubscription or comparable arrangement.

(f) *Program-length commercial* means any commercial or other advertisement fifteen (15) minutes in length or longer or intended to fill a television or radio broadcasting or·cablecasting time slot of fifteen (15) minutes in length or longer.

(g) *Provider of pay-per-call services* means any person who sells or offers to sell a pay-per-call service. A person who provides only transmission services or billing and collection services shall not be considered a provider of pay-per-call services.

(h) *Reasonably understandable volume* means at an audible level that renders the message intelligible to the receiving audience, and, in any event, at least the same audible level as that principally used in the advertisement or the pay-per-call service.

(i) *Service bureau* means any person, other than a common carrier, who provides, among other things, access to telephone service and voice storage to pay-per-call service providers.

(j) *Slow and deliberate manner* means at a rate that renders the message intelligible to the receiving audience, and, in any event, at a cadence or rate no faster than that principally used in

the advertisement or the pay-per-call service.

(k) *Sweepstakes,* including games of chance, means a game or promotional mechanism that involves the elements of a prize and chance and does not require consideration.

**§ 308.3 Advertising of pay-per-call services.**

(a) *General requirements.* The following requirements apply to disclosures required in advertisements under §§ 308.3 (b)–(d), and (f):

(1) The disclosures shall be made in the same language as that principally used in the advertisement.

(2) Television video and print disclosures shall be of a color or shade that readily contrasts with the background of the advertisement.

(3) In print advertisements, disclosures shall be parallel with the base of the advertisement.

(4) Audio disclosures, whether in television or radio, shall be delivered in a slow and deliberate manner and in a reasonably understandable volume.

(5) Nothing contrary to, inconsistent with, or in mitigation of, the required disclosures shall be used in any advertisement in any medium; nor shall any audio, video or print technique be used that is likely to detract significantly from the communication of the disclosures.

(6) In any program-length commercial, required disclosures shall be made at least three times (unless more frequent disclosure is otherwise required) near the beginning, middle and end of the commercial.

(b) *Cost of the call.* (1) The provider of pay-per-call services shall clearly and conspicuously disclose the cost of the call, in Arabic numerals, in any advertisement for the pay-per-call service, as follows:

(i) If there is a flat fee for the call, the advertisement shall state the total cost of the call.

(ii) If the call is billed on a time-sensitive basis, the advertisement shall state the cost per minute and any minimum charges. If the length of the program can be determined in advance, the advertisement shall also state the

**Appendix A**

**§ 308.3**

maximum charge that could be incurred if the caller listens to the complete program.

(iii) If the call is billed on a variable rate basis, the advertisement shall state, in accordance with §§ 308.3(b)(1)(i) and (ii), the cost of the initial portion of the call, any minimum charges, and the range of rates that may be charged depending on the options chosen by the caller.

(iv) The advertisement shall disclose any other fees that will be charged for the service.

(v) If the caller may be transferred to another pay-per-call service, the advertisement shall disclose the cost of the other call, in accordance with §§ 308.3(b)(1)(i), (ii), (iii), and (iv).

(2) For purposes of § 308.3(b), disclosures shall be made "clearly and conspicuously" as set forth in § 308.3(a) and as follows:

(i) In a television or videotape advertisement, the video disclosure shall appear adjacent to each video presentation of the pay-per-call number. However, in an advertisement displaying more than one pay-per-call number with the same cost, the video disclosure need only appear adjacent to the largest presentation of the pay-per-call number. Each letter or numeral of the video disclosure shall be, at a minimum, one-half the size of each letter or numeral of the pay-per-call number to which the disclosure is adjacent. In addition, the video disclosure shall appear on the screen for the duration of the presentation of the pay-per-call number. An audio disclosure shall be made at least once, simultaneously with a video presentation of the disclosure. However, no audio presentation of the disclosure is required in: (A) An advertisement fifteen (15) seconds or less in length in which the pay-per-call number is not presented in the audio portion, or (B) an advertisement in which there is no audio presentation of information regarding the pay-per-call service, including the pay-per-call number. In an advertisement in which the pay-per-call number is presented *only* in the audio portion, the cost of the call shall be delivered immediately following the first and last delivery of the pay-per-call number, except that in a program-length commercial, the dis-

closure shall be delivered immediately following each delivery of the pay-per-call number.

(ii) In a print advertisement, the disclosure shall be placed adjacent to each presentation of the pay-per-call number. However, in an advertisement displaying more than one pay-per-call number with the same cost, the disclosure need only appear adjacent to the largest presentation of the pay-per-call number. Each letter or numeral of the disclosure shall be, at a minimum, one-half the size of each letter or numeral of the pay-per-call number to which the disclosure is adjacent.

(iii) In a radio advertisement, the disclosure shall be made at least once, and shall be delivered immediately following the first delivery of the pay-per-call number. In a program-length commercial, the disclosure shall be delivered immediately following each delivery of the pay-per-call number.

(c) *Sweepstakes; games of chance.* (1) The provider of pay-per-call services that advertises a prize or award or a service or product at no cost or for a reduced cost, to be awarded to the winner of any sweepstakes, including games of chance, shall clearly and conspicuously disclose in the advertisement the odds of being able to receive the prize, award, service, or product at no cost or reduced cost. If the odds are not calculable in advance, the advertisement shall disclose the factors used in calculating the odds. Either the advertisement or the preamble required by § 308.5(a) for such service shall clearly and conspicuously disclose that no call to the pay-per-call service is required to participate, and shall also disclose the existence of a free alternative method of entry, and either instructions on how to enter, or a local or toll-free telephone number or address to which consumers may call or write for information on how to enter the sweepstakes. Any description or characterization of the prize, award, service, or product that is being offered at no cost or reduced cost shall be truthful and accurate.

(2) For purposes of § 308.3(c), disclosures shall be made "clearly and conspicuously" as set forth in § 308.3(a) and as follows:

**Appendix A**

(i) In a television or videotape advertisement, the disclosures may be made in either the audio or video portion of the advertisement. If the disclosures are made in the video portion, they shall appear on the screen in sufficient size and for sufficient time to allow consumers to read and comprehend the disclosures.

(ii) In a print advertisement, the disclosures shall appear in a sufficient size and prominence and such location to be readily noticeable, readable and comprehensible.

(d) *Federal programs.* (1) The provider of pay-per-call services that advertises a pay-per-call service that is not operated or expressly authorized by a Federal agency, but that provides information on a Federal program, shall clearly and conspicuously disclose in the advertisement that the pay-per-call service is not authorized, endorsed, or approved by any Federal agency. Advertisements providing information on a Federal program shall include, but not be limited to, advertisements that contain a seal, insignia, trade or brand name, or any other term or symbol that reasonably could be interpreted or construed as implying any Federal government connection, approval, or endorsement.

(2) For purposes of § 308.3(d), disclosures shall be made "clearly and conspicuously" as set forth in § 308.3(a) and as follows:

(i) In a television or videotape advertisement, the disclosure may be made in either the audio or video portion of the advertisement. If the disclosure is made in the video portion, it shall appear on the screen in sufficient size and for sufficient time to allow consumers to read and comprehend the disclosure. The disclosure shall begin within the first fifteen (15) seconds of the advertisement.

(ii) In a print advertisement, the disclosure shall appear in a sufficient size and prominence and such location to be readily noticeable, readable and comprehensible. The disclosure shall appear in the top one-third of the advertisement.

(iii) In a radio advertisement, the disclosure shall begin within the first fifteen (15) seconds of the advertisement.

(e) *Prohibition on advertising to children.* (1) The provider of pay-per-call services shall not direct advertisements for such pay-per-call services to children under the age of 12, unless the service is a bona fide educational service.

(2) For the purposes of this regulation, advertisements directed to children under 12 shall include: any pay-per-call advertisement appearing during or immediately adjacent to programming for which competent and reliable audience composition data demonstrate that more than 50% of the audience is composed of children under 12, and any pay-per-call advertisement appearing in a periodical for which competent and reliable readership data demonstrate that more than 50% of the readership is composed of children under 12.

(3) For the purposes of this regulation, if competent and reliable audience composition or readership data does not demonstrate that more than 50% of the audience or readership is composed of children under 12, then the Commission shall consider the following criteria in determining whether an advertisement is directed to children under 12:

(i) Whether the advertisement appears in a publication directed to children under 12, including, but not limited to, books, magazines and comic books;

(ii) Whether the advertisement appears during or immediately adjacent to television programs directed to children under 12, including, but not limited to, children's programming as defined by the Federal Communications Commission, animated programs, and after-school programs;

(iii) Whether the advertisement appears on a television station or channel directed to children under 12;

(iv) Whether the advertisement is broadcast during or immediately adjacent to radio programs directed to children under 12, or broadcast on a radio station directed to children under 12;

(v) Whether the advertisement appears on the same video as a commercially-prepared video directed to children under 12, or preceding a movie directed to children under 12 shown in a movie theater;

**§ 308.3**                                                          **16 CFR Ch. I (1–1–98 Edition)**

(vi) Whether the advertisement or promotion appears on product packaging directed to children under 12; and

(vii) Whether the advertisement, regardless of when or where it appears, is directed to children under 12 in light of its subject matter, visual content, age of models, language, characters, tone, message, or the like.

(f) *Advertising to individuals under the age of 18.* (1) The provider of pay-per-call services shall ensure that any pay-per-call advertisement directed primarily to individuals under the age of 18 shall contain a clear and conspicuous disclosure that all individuals under the age of 18 must have the permission of such individual's parent or legal guardian prior to calling such pay-per-call service.

(2) For purposes of § 308.3(f), disclosures shall be made "clearly and conspicuously" as set forth in § 308.3(a) and as follows:

(i) In a television or videotape advertisement, each letter or numeral of the video disclosure shall be, at a minimum, one-half the size of each letter or numeral of the largest presentation of the pay-per-call number. The video disclosure shall appear on the screen for sufficient time to allow consumers to read and comprehend the disclosure. An audio disclosure shall be made at least once, simultaneously with a video presentation of the disclosure. However, no audio presentation of the disclosure is required in: (A) An advertisement fifteen (15) seconds or less in length in which the pay-per-call number is not presented in the audio portion, or (B) an advertisement in which there is no audio presentation of information regarding the pay-per-call service, including the pay-per-call number.

(ii) In a print advertisement, each letter or numeral of the disclosure shall be, at a minimum, one-half the size of each letter or numeral of the largest presentation of the pay-per-call number.

(3) For the purposes of this regulation, advertisements directed primarily to individuals under 18 shall include: Any pay-per-call advertisement appearing during or immediately adjacent to programming for which competent and reliable audience composition data demonstrate that more than

50% of the audience is composed of individuals under 18, and any pay-per-call advertisement appearing in a periodical for which competent and reliable readership data demonstrate that more than 50% of the readership is composed of individuals under 18.

(4) For the purposes of this regulation, if competent and reliable audience composition or readership data does not demonstrate that more than 50% of the audience or readership is composed of individuals under 18, then the Commission shall consider the following criteria in determining whether an advertisement is directed primarily to individuals under 18:

(i) Whether the advertisement appears in publications directed primarily to individuals under 18, including, but not limited to, books, magazines and comic books;

(ii) Whether the advertisement appears during or immediately adjacent to television programs directed primarily to individuals under 18, including, but not limited to, mid-afternoon weekday television shows;

(iii) Whether the advertisement is broadcast on radio stations that are directed primarily to individuals under 18;

(iv) Whether the advertisement appears on a cable or broadcast television station directed primarily to individuals under 18;

(v) Whether the advertisement appears on the same video as a commercially-prepared video directed primarily to individuals under 18, or preceding a movie directed primarily to individuals under 18 shown in a movie theater; and

(vi) Whether the advertisement, regardless of when or where it appears, is directed primarily to individuals under 18 in light of its subject matter, visual content, age of models, language, characters, tone, message, or the like.

(g) *Electronic tones in advertisements.* The provider of pay-per-call services is prohibited from using advertisements that emit electronic tones that can automatically dial a pay-per-call service.

(h) *Telephone solicitations.* The provider of pay-per-call services shall ensure that any telephone message that solicits calls to the pay-per-call service

**Appendix A**

**Federal Trade Commission** §308.5

discloses the cost of the call in a slow and deliberate manner and in a reasonably understandable volume, in accordance with §§308.3(b)(1)(i)–(v).

(1) *Referral to toll-free telephone numbers.* The provider of pay-per-call services is prohibited from referring in advertisements to an 800 telephone number, or any other telephone number advertised as or widely understood to be toll-free, if that number violates the prohibition concerning toll-free numbers set forth in §308.5(i).

**§308.4  Special rule for infrequent publications.**

(a) The provider of any pay-per-call service that advertises a pay-per-call service in a publication that meets the requirements set forth in §308.4(c) may include in such advertisement, in lieu of the cost disclosures required by §308.3(b), a clear and conspicuous disclosure that a call to the advertised pay-per-call service may result in a substantial charge.

(b) The provider of any pay-per-call service that places an alphabetical listing in a publication that meets the requirements set forth in §308.4(c) is not required to make any of the disclosures required by §§308.3 (b), (c), (d) and (f) in the alphabetical listing, provided that such listing does not contain any information except the name, address and telephone number of the pay-per-call provider.

(c) The publication referred to in §308.4(a) and (b) must be:

(1) Widely distributed;

(2) Printed annually or less frequently; and

(3) One that has an established policy of not publishing specific prices in advertisements.

**§308.5  Pay-per-call service standards.**

(a) *Preamble message.* The provider of pay-per-call services shall include, in each pay-per-call message, an introductory disclosure message ("preamble") in the same language as that principally used in the pay-per-call message, that clearly, in a slow and deliberate manner and in a reasonably understandable volume:

(1) Identifies the name of the provider of the pay-per-call service and describes the service being provided;

(2) Specifies the cost of the service as follows:

(i) If there is a flat fee for the call, the preamble shall state the total cost of the call;

(ii) If the call is billed on a time-sensitive basis, the preamble shall state the cost per minute and any minimum charges; if the length of the program can be determined in advance, the preamble shall also state the maximum charge that could be incurred if the caller listens to the complete program;

(iii) If the call is billed on a variable rate basis, the preamble shall state, in accordance with §§308.5(a)(2)(i) and (ii), the cost of the initial portion of the call, any minimum charges, and the range of rates that may be charged depending on the options chosen by the caller;

(iv) Any other fees that will be charged for the service shall be disclosed, as well as fees for any other pay-per-call service to which the caller may be transferred;

(3) Informs the caller that charges for the call begin, and that to avoid charges the call must be terminated three seconds after a clearly discernible signal or tone indicating the end of the preamble;

(4) Informs the caller that anyone under the age of 18 must have the permission of parent or legal guardian in order to complete the call; and

(5) Informs the caller, in the case of a pay-per-call service that is not operated or expressly authorized by a Federal agency but that provides information on a Federal program, or that uses a trade or brand name or any other term that reasonably could be interpreted or construed as implying any Federal government connection, approval or endorsement, that the pay-per-call service is not authorized, endorsed, or approved by any Federal agency.

(b) *No charge to caller for preamble message.* The provider of pay-per-call services is prohibited from charging a caller any amount whatsoever for such a service if the caller hangs up at any time prior to three seconds after the signal or tone indicating the end of the preamble described in §308.5(a). However, the three-second delay, and the

383

**§ 308.5**

message concerning such delay described in § 308.5(a)(3), is not required if the provider of pay-per-call services offers the caller an affirmative means (such as pressing a key on a telephone keypad) of indicating a decision to incur the charges.

(c) *Nominal cost calls.* The preamble described in § 308.5(a) is not required when the entire cost of the pay-per-call service, whether billed as a flat rate or on a time sensitive basis, is $2.00 or less.

(d) *Data service calls.* The preamble described in § 308.5(a) is not required when the entire call consists of the non-verbal transmission of information.

(e) *Bypass mechanism.* The provider of pay-per-call services that offers to frequent callers or regular subscribers to such services the option of activating a bypass mechanism to avoid listening to the preamble during subsequent calls shall not be deemed to be in violation of § 308.5(a), *provided that* any such bypass mechanism shall be disabled for a period of no less than 30 days immediately after the institution of an increase in the price for the service or a change in the nature of the service offered.

(f) *Billing limitations.* The provider of pay-per-call services is prohibited from billing consumers in excess of the amount described in the preamble for those services and from billing for any services provided in violation of any section of this rule.

(g) *Stopping the assessment of time-based charges.* The provider of pay-per-call services shall stop the assessment of time-based charges immediately upon disconnection by the caller.

(h) *Prohibition on services to children.* The provider of pay-per-call services shall not direct such services to children under the age of 12, unless such service is a bona fide educational service. The Commission shall consider the following criteria in determining whether a pay-per-call service is directed to children under 12:

(1) Whether the pay-per-call service is advertised in the manner set forth in §§ 308.3(e)(2) and (3); and

(2) Whether the pay-per-call service, regardless of when or where it is advertised, is directed to children under 12,

in light of its subject matter, content, language, featured personality, characters, tone, message, or the like.

(i) *Prohibition concerning toll-free numbers.* Any person is prohibited from using an 800 number or other telephone number advertised as or widely understood to be toll-free in a manner that would result in:

(1) The calling party being assessed, by virtue of completing the call, a charge for the call;

(2) The calling party being connected to an access number for, or otherwise transferred to, a pay-per-call service;

(3) The calling party being charged for information conveyed during the call unless the calling party has a presubscription or comparable arrangement to be charged for the information; or

(4) The calling party being called back collect for the provision of audio or data information services, simultaneous voice conversation services, or products.

(j) *Disclosure requirements for billing statements.* The provider of pay-per-call services shall ensure that any billing statement for such provider's charges shall:

(1) Display any charges for pay-per-call services in a portion of the consumer's bill that is identified as not being related to local and long distance telephone charges;

(2) For each charge so displayed, specify the type of service, the amount of the charge, and the date, time, and, for calls billed on a time-sensitive basis, the duration of the call; and

(3) Display the local or toll-free telephone number where consumers can obtain answers to their questions and information on their rights and obligations with regard to their use of pay-per-call services, and can obtain the name and mailing address of the provider of pay-per-call services.

(k) *Refunds to consumers.* The provider of pay-per-call services shall be liable for refunds or credits to consumers who have been billed for pay-per-call services, and who have paid the charges for such services, pursuant to pay-per-call programs that have been found to have violated any provision of this rule or any other Federal rule or law.

**Federal Trade Commission**

(l) *Service bureau liability*. A service bureau shall be liable for violations of the rule by pay-per-call services using its call processing facilities where it knew or should have known of the violation.

**§308.6   Access to information.**

Any common carrier that provides telecommunication services to any provider of pay-per-call services shall make available to the Commission, upon written request, any records and financial information maintained by such carrier relating to the arrangements (other than for the provision of local exchange service) between such carrier and any provider of pay-per-call services.

**§308.7   Billing and collection for pay-per-call services.**

(a) *Definitions*. For the purposes of this section, the following definitions shall apply:

(1) *Billing entity* means any person who transmits a billing statement to a customer for a telephone-billed purchase, or any person who assumes responsibility for receiving and responding to billing error complaints or inquiries.

(2) *Billing error* means any of the following:

(i) A reflection on a billing statement of a telephone-billed purchase that was not made by the customer nor made from the telephone of the customer who was billed for the purchase or, if made, was not in the amount reflected on such statement.

(ii) A reflection on a billing statement of a telephone-billed purchase for which the customer requests additional clarification, including documentary evidence thereof.

(iii) A reflection on a billing statement of a telephone-billed purchase that was not accepted by the customer or not provided to the customer in accordance with the stated terms of the transaction.

(iv) A reflection on a billing statement of a telephone-billed purchase for a call made to an 800 or other toll free telephone number.

(v) The failure to reflect properly on a billing statement a payment made by the customer or a credit issued to the customer with respect to a telephone-billed purchase.

(vi) A computation error or similar error of an accounting nature on a billing statement of a telephone-billed purchase.

(vii) Failure to transmit a billing statement for a telephone-billed purchase to a customer's last known address if that address was furnished by the customer at least twenty days before the end of the billing cycle for which the statement was required.

(viii) A reflection on a billing statement of a telephone-billed purchase that is not identified in accordance with the requirements of §308.5(j).

(3) *Customer* means any person who acquires or attempts to acquire goods or services in a telephone-billed purchase, or who receives a billing statement for a telephone-billed purchase charged to a telephone number assigned to that person by a providing carrier.

(4) *Preexisting agreement* means a "presubscription or comparable arrangement," as that term is defined in §308.2(e).

(5) *Providing carrier* means a local exchange or interexchange common carrier providing telephone services (other than local exchange services) to a vendor for a telephone-billed purchase that is the subject of a billing error complaint or inquiry.

(6) *Telephone-billed purchase* means any purchase that is completed solely as a consequence of the completion of the call or a subsequent dialing, touch tone entry, or comparable action of the caller. Such term does not include:

(i) A purchase by a caller pursuant to a preexisting agreement with a vendor;

(ii) Local exchange telephone services or interexchange telephone services or any service that the Federal Communications Commission determines by rule—

(A) Is closely related to the provision of local exchange telephone services or interexchange telephone services; and

(B) Is subject to billing dispute resolution procedures required by Federal or state statute or regulation; or

(iii) The purchase of goods or services that is otherwise subject to billing dispute resolution procedures required by Federal statute or regulation.

**Appendix A**

§ 308.7

(7) *Vendor* means any person who, through the use of the telephone, offers goods or services for a telephone-billed purchase.

(b) *Initiation of billing review.* A customer, may initiate a billing review with respect to a telephone-billed purchase by providing the billing entity with notice of a billing error no later than 60 days after the billing entity transmitted the first billing statement that contains a charge for such telephone-billed purchase. If the billing error is the reflection on a billing statement of a telephone-billed purchase not provided to the customer in accordance with the stated terms of the transaction, the 60-day period shall begin to run from the date the goods or services are delivered or, if not delivered, should have been delivered, if such date is later than the date the billing statement was transmitted. A billing error notice shall:

(1) Set forth or otherwise enable the billing entity to identify the customer's name and the telephone number to which the charge was billed;

(2) Indicate the customer's belief that the statement contains a billing error and the type, date, and amount of such; and

(3) Set forth the reasons for the customer's belief, to the extent possible, that the statement contains a billing error.

(c) *Disclosure of method of providing notice; presumption if oral notice is permitted.* A billing entity shall clearly and conspicuously[2] disclose on each billing statement or on other material accompanying the billing statement the method (oral or written) by which the customer may provide notice to initiate review of a billing error in the manner set forth in § 308.7(b). If oral notice is permitted, any customer who orally communicates an allegation of a billing error to a billing entity shall be presumed to have properly initiated a

[2]The standard for "clear and conspicuous" as used in this section shall be the standard enunciated by the Board of Governors of the Federal Reserve System in its Official Staff Commentary on Regulation Z, which requires simply that the disclosures be in a reasonably understandable form. *See* 12 CFR part 226, Supplement I, Comment 226.5(a)(1)–1.

16 CFR Ch. I (1–1–98 Edition)

billing review in accordance with the requirements of § 308.7(b).

(d) *Response to customer notice.* A billing entity that receives notice of a billing error as described in § 308.7(b) shall:

(1) Send a written acknowledgement to the customer including a statement that any disputed amount need not be paid pending investigation of the billing error. This shall be done no later than forty (40) days after receiving the notice, unless the action required by § 308.7(d)(2) is taken within such 40-day period; and

(2)(i) Correct the billing error and credit the customer's account for any disputed amount and any related charges, and notify the customer of the correction. The billing entity also shall disclose to the customer that collection efforts may occur despite the credit, and shall provide the names, mailing addresses, and business telephone numbers of the vendor and providing carrier, as applicable, that are the subject of the telephone-billed purchase, or provide the customer with a local or toll-free telephone number that the customer may call to obtain this information directly. However, the billing entity is not required to make the disclosure concerning collection efforts if the vendor, its agent, or the providing carrier, as applicable, will not collect or attempt to collect the disputed charge; or

(ii) Transmit an explanation to the customer, after conducting a reasonable investigation (including, where appropriate, contacting the vendor or providing carrier),[3] setting forth the reasons why it has determined that no

[3]If a customer submits a billing error notice alleging either the nondelivery of goods or services or that information appearing on a billing statement has been reported incorrectly to the billing entity, the billing entity shall not deny the assertion unless it conducts a reasonable investigation and determines that the goods or services were actually delivered as agreed or that the information was correct. There shall be a rebuttable presumption that goods or services were actually delivered to the extent that a vendor or providing carrier produces documents prepared and maintained in the ordinary course of business showing the date on, and the place to, which the goods or services were transmitted or delivered.

386

**Appendix A**

**Federal Trade Commission**                                              **§ 308.7**

billing error occurred or that a different billing error occurred from that asserted, make any appropriate adjustments to the customer's account, and, if the customer so requests, provide a written explanation and copies of documentary evidence of the customer's indebtedness.

(3) The action required by § 308.7(d)(2) shall be taken no later than two complete billing cycles of the billing entity (in no event later than ninety (90) days) after receiving the notice of the billing error and before taking any action to collect the disputed amount, or any part thereof. After complying with § 308.7(d)(2), the billing entity shall:

(i) If it is determined that any disputed amount is in error, promptly notify the appropriate providing carrier or vendor, as applicable, of its disposition of the customer's billing error and the reasons therefor; and

(ii) Promptly notify the customer in writing of the time when payment is due of any portion of the disputed amount determined not to be in error, which time shall be the longer of ten (10) days or the number of days the customer is ordinarily allowed (whether by custom, contract or state law) to pay undisputed amounts, and that failure to pay such amount may be reported to a credit reporting agency or subject the customer to a collection action, if that in fact may happen.

(e) *Withdrawal of billing error notice.* A billing entity need not comply with the requirements of § 308.7(d) if the customer has, after giving notice of a billing error and before the expiration of the time limits specified therein, agreed that the billing statement was correct or agreed to withdraw voluntarily the billing error notice.

(f) *Limitation on responsibility for billing error.* After complying with the provisions of § 308.7(d), a billing entity has no further responsibility under that section if the customer continues to make substantially the same allegation with respect to a billing error.

(g) *Customer's right to withhold disputed amount; limitation on collection action.* Once the customer has submitted notice of a billing error to a billing entity, the customer need not pay, and the billing entity, providing carrier, or vendor may not try to collect, any por-

tion of any required payment that the customer reasonably believes is related to the disputed amount until the billing entity receiving the notice has complied with the requirements of § 308.7(d). The billing entity, providing carrier, or vendor are not prohibited from taking any action to collect any undisputed portion of the bill, or from reflecting a disputed amount and related charges on a billing statement, provided that the billing statement clearly states that payment of any disputed amount or related charges is not required pending the billing entity's compliance with § 308.7(d).

(h) *Prohibition on charges for initiating billing review.* A billing entity, providing carrier, or vendor may not impose on the customer any charge related to the billing review, including charges for documentation or investigation.

(i) *Restrictions on credit reporting*—(1) *Adverse credit reports prohibited.* Once the customer has submitted notice of a billing error to a billing entity, a billing entity, providing carrier, vendor, or other agent may not report or threaten directly or indirectly to report adverse information to any person because of the customer's withholding payment of the disputed amount or related charges, until the billing entity has met the requirements of § 308.7(d) and allowed the customer as many days thereafter to make payment as prescribed by § 308.7(d)(3)(ii).

(2) *Reports on continuing disputes.* If a billing entity receives further notice from a customer within the time allowed for payment under § 308.7(i)(1) that any portion of the billing error is still in dispute, a billing entity, providing carrier, vendor, or other agent may not report to any person that the customer's account is delinquent because of the customer's failure to pay that disputed amount unless the billing entity, providing carrier, vendor, or other agent also reports that the amount is in dispute and notifies the customer in writing of the name and address of each person to whom the vendor, billing entity, providing carrier, or other agent has reported the account as delinquent.

(3) *Reporting of dispute resolutions required.* A billing entity, providing carrier, vendor, or other agent shall report

387

**Appendix A**

in writing any subsequent resolution of any matter reported pursuant to § 308.7(i)(2) to all persons to whom such matter was initially reported.

(j) *Forfeiture of right to collect disputed amount.* Any billing entity, providing carrier, vendor, or other agent who fails to comply with the requirements of §§ 308.7(c), (d), (g), (h), or (i) forfeits any right to collect from the customer the amount indicated by the customer, under § 308.7(b)(2), to be in error, and any late charges or other related charges thereon, up to $50 per transaction.

(k) *Prompt notification of returns and crediting of refunds.* When a vendor other than the billing entity accepts the return of property or forgives a debt for services in connection with a telephone-billed purchase, the vendor shall, within seven (7) business days from accepting the return or forgiving the debt, either:

(1) Mail or deliver a cash refund directly to the customer's address, and notify the appropriate billing entity that the customer has been given a refund, or

(2) Transmit a credit statement to the billing entity through the vendor's normal channels for billing telephone-billed purchases. The billing entity shall, within seven (7) business days after receiving a credit statement, credit the customer's account with the amount of the refund.

(l) *Right of customer to assert claims or defenses.* Any billing entity or providing carrier who seeks to collect charges from a customer for a telephone-billed purchase that is the subject of a dispute between the customer and the vendor shall be subject to all claims (other than tort claims) and defenses arising out of the transaction and relating to the failure to resolve the dispute that the customer could assert against the vendor, if the customer has made a good faith attempt to resolve the dispute with the vendor or providing carrier (other than the billing entity). The billing entity or providing carrier shall not be liable under this paragraph for any amount greater than the amount billed to the customer for the purchase (including any related charges).

(m) *Retaliatory actions prohibited.* A billing entity, providing carrier, vendor, or other agent may not accelerate any part of the customer's indebtedness or restrict or terminate the customer's access to pay-per-call services solely because the customer has exercised in good faith rights provided by this section.

(n) *Notice of billing error rights*—(1) *Annual statement.* (i) A billing entity shall mail or deliver to each customer, with the first billing statement for a telephone-billed purchase mailed or delivered after the effective date of these regulations, a statement of the customer's billing rights with respect to telephone-billed purchases. Thereafter the billing entity shall mail or deliver the billing rights statement at least once per calendar year to each customer to whom it has mailed or delivered a billing statement for a telephone-billed purchase during the previous twelve months. The billing rights statement shall disclose that the rights and obligations of the customer and the billing entity, set forth therein, are provided under the federal Telephone Disclosure and Dispute Resolution Act. The statement shall describe the procedure that the customer must follow to notify the billing entity of a billing error and the steps that the billing entity must take in response to the customer's notice. If the customer is permitted to provide oral notice of a billing error, the statement shall disclose that a customer who orally communicates an allegation of a billing error is presumed to have provided sufficient notice to initiate a billing review. The statement shall also disclose the customer's right to withhold payment of any disputed amount, and that any action to collect any disputed amount will be suspended, pending completion of the billing review. The statement shall further disclose the customer's rights and obligations if the billing entity determines that no billing error occurred, including what action the billing entity may take if the customer continues to withhold payment of the disputed amount. Additionally, the statement shall inform the customer of the billing entity's obligation to forfeit any disputed amount (up to $50 per transaction) if the billing entity fails

**Appendix A**

**Federal Trade Commission**                    **Pt. 309**

to follow the billing and collection procedures prescribed by §308.7 of this rule.

(ii) A billing entity that is a common carrier may comply with §308.7(n)(1)(i) by, within 60 days after the effective date of these regulations, mailing or delivering the billing rights statement to all of its customers and, thereafter, mailing or delivering the billing rights statement at least once per calendar year, at intervals of not less than 6 months nor more than 18 months, to all of its customers.

(2) *Alternative summary statement.* As an alternative to §308.7(n)(1), a billing entity may mail or deliver, on or with each billing statement, a statement that sets forth the procedure that a customer must follow to notify the billing entity of a billing error. The statement shall also disclose the customer's right to withhold payment of any disputed amount, and that any action to collect any disputed amount will be suspended, pending completion of the billing review.

(3) *General disclosure requirements.* (i) The disclosures required by §308.7(n) shall be made clearly and conspicuously on a separate statement that the customer may keep.

(ii) The disclosures required by §308.7(n)(2) shall be made clearly and conspicuously and may be made on a separate statement or on the customer's billing statement. If any of the disclosures are provided on the back of the billing statement, the billing entity shall include a reference to those disclosures on the front of the statement.

(iii) At the billing entity's option, additional information or explanations may be supplied with the disclosures required by §308.7(n), but none shall be stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required to be disclosed. The disclosures required by §308.7(n) shall appear separately and above any other disclosures.

(o) *Multiple billing entities.* If a telephone-billed purchase involves more than one billing entity, only one set of disclosures need by given, and the billing entities shall agree among themselves which billing entity must com-

ply with the requirements that this regulation imposes on any or all of them. The billing entity designated to receive and respond to billing errors shall remain the only billing entity responsible for complying with the terms of §308.7(d). If a billing entity other than the one designated to receive and respond to billing errors receives notice of a billing error as described in §308.7(b), that billing entity shall either: (1) Promptly transmit to the customer the name, mailing address, and business telephone number of the billing entity designated to receive and respond to billing errors; or (2) transmit the billing error notice within fifteen (15) days to the billing entity designated to receive and respond to billing errors. The time requirements in §308.7(d) shall not begin to run until the billing entity designated to receive and respond to billing errors receives notice of the billing error, either from the customer or from the billing entity to whom the customer transmitted the notice.

(p) *Multiple customers.* If there is more than one customer involved in a telephone-billed purchase, the disclosures may be made to any customer who is primarily liable on the account.

**§308.8 Severability.**

The provisions of this rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

**§308.9 Rulemaking review.**

No later than four years after the effective date of this Rule, the Commission shall initiate a rulemaking review proceeding to evaluate the operation of the rule.

**PART 309—LABELING REQUIREMENTS FOR ALTERNATIVE FUELS AND ALTERNATIVE FUELED VEHICLES**

**Subpart A—General**

Sec.
309.1   Definitions.
309.2   What this part does.
309.3   Stayed or invalid portions.

389